UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JARRETT E. SLATER, | |
| Plaintiff, | |
| v. | Case No. 24-cv-02231-JPG |
| LVNV FUNDING, LLC, | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This case is before the Court on Defendant LVNV Funding's Motion for Summary Judgment (Doc. 13). Defendant asks the Court to enter summary judgment in its favor on all five of Plaintiff Jarrett Slater's claims. Plaintiff failed to file a response to the motion.

**I.     BACKGROUND**

This action arises from a dispute over Plaintiff's Walmart Rewards Credit Card Account that ends in 4537. Defendant is the current owner of Plaintiff's account. Resurgent Capital Services ("Resurgent") is a separate company that manages Defendant's accounts on behalf of Defendant. On August 20, 2022, Resurgent sent Plaintiff an initial letter that enclosed a validation notice form as required by section 1692g of the Fair Debt Collection Practices Act. The form had a detachable bottom portion. On September 16, 2022, Resurgent received an envelope from Plaintiff by certified mail with tracking number ending in 5195-6882. The envelope contained the bottom portion of the validation notice form that was enclosed in Resurgent's August 20, 2022, letter. The returned portion of the form shows a written promise to pay, stating: "I promise to pay to the order of Capital One N.A." and "Make Payment by EFT!!!" The promise to pay bears a signature for Jarrett Slater and his social security number. The envelope also enclosed a blank check from Gateway Metro Credit Union in the name of Jarrett

Slater and displaying an address of 1495 Cantwell Lane, Apartment 5, Swansea, IL 62226-2085.

Subsequently, on November 7, 2022, Plaintiff sent a dispute letter to Resurgent requesting validation of the debt. The dispute letter states, in part, "I am not refusing to pay the alleged obligation, but I need all the information requested," "I do not wish to speak with you under any circumstances, therefore, anything you wish to say to me must be in writing," and "I dispute the validity of this debt, and any portion thereof." Resurgent provided verification of Plaintiff's debt on November 20, 2022. That verification confirmed in writing that the amount being demanded is what the creditor claimed was owed and provided the reference number for the account, the account number, the name of the current creditor, the name of the debtor, the name of the original creditor, the last date of payment, the balance due, the date the account was opened, and the date the account was charged off. As a result of Plaintiff's November 7, 2022, dispute letter, Resurgent reported the debt on the Walmart Rewards Credit Card Account as disputed. The debt is listed as "disputed by consumer" on Plaintiff's credit reports.

On August 7, 2024, Plaintiff filed a small claims complaint against Defendant in the St. Clair County Circuit Court. His complaint asserts five counts: (1) violations of the Fair Debt Collection Practices Act; (2) violations of the Fair Credit Reporting Act; (3) violations of the Illinois Collection Agency Act; (4) a violation of the Illinois Consumer Fraud and Deceptive Practices Act; and (5) a violation of the Illinois Uniform Commercial Code. Defendant received the complaint on August 30, 2024, and removed the action to this Court on September 26, 2024. On June 23, 2025, Defendant filed its motion for summary judgment. Plaintiff did not respond to the motion within thirty days after it was served as required by SDIL-LR 7.1(b)(1)(A). As a result, on August 4, 2025, the Court entered an order requiring the Plaintiff to show cause on or

before August 29, 2025, why the Court should not construe his failure to timely respond to the motion for summary judgment as an admission of the facts and legal positions asserted in the motion (Doc. 14). Plaintiff did not respond to the order to show cause. Due to Plaintiff's failure to respond, the Court considers all of Defendant's undisputed factual assertions as admitted for the purposes of summary judgment. *See* SDIL-LR 56.1(g); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).

## II.  LEGAL STANDARD

### A.  Summary Judgment Standard:

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED. R. CIV. P. 56(a)); *accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. In assessing a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 900 (7th Cir. 2011). However, the "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture."

3

*Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (internal quotations and citations omitted).

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the nonmoving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways. First, it may present evidence that affirmatively negates an essential element of the nonmoving party's case. *See* FED. R. CIV. P. 56(c)(1)(A). Second, it may point to an absence of evidence to support an essential element of the nonmoving party's case without submitting any evidence. *See* FED. R. CIV. P. 56(c)(1)(B). Where the moving party fails to meet its strict burden, the Court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

### III. ANALYSIS

#### A. Count 1 – Fair Debt Collection Practices Act ("FDCPA"):

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). It pursues these purposes "by imposing affirmative requirements on debt collectors and prohibiting a range of debt-collection practices." *Rotkiske v. Klemm*, 589 U.S. 8, 10 (2019). The Act "authorizes private civil actions against debt collectors" to enforce its requirements. *Id.* (citing 15 U.S.C. § 1692k(a)). These

private civil actions must be brought "within one year from the date on which the violation occurs." *Id.* (citing 15 U.S.C. § 1692k(d)).

Plaintiff alleges that Defendant violated three sections of the FDCPA: (1) section 1692c, (2) section 1692e, and (3) section 1692g. The Court finds that Plaintiff's FDCPA claim is barred by the statute of limitations. Plaintiff's complaint is related to conduct that occurred between August 2022 and November 2022. The earliest action occurred on August 20, 2022, when Resurgent mailed its initial letter to Plaintiff, and the latest action occurred on November 20, 2022, when Resurgent provided verification of Plaintiff's debt. Plaintiff filed the complaint in this action on August 7, 2024, which is over one year and eight months after the latest action he complains of. Therefore, Plaintiff's FDCPA claim is barred by the one-year statute of limitations, and Defendant is entitled to summary judgment.

B.  Count 2 – Fair Credit Reporting Act ("FCRA"):

The FCRA was adopted to ensure accuracy and fairness in credit reporting. *See* 15 U.S.C. § 1681. It allows consumers to bring private civil actions for willful or negligent violations of the Act's provisions. *See* 15 U.S.C. §§ 1681n, 1681o. Plaintiff alleges that Defendant violated two sections of the FCRA: (1) section 1681s-2, and (2) section 1681d. The Court concludes that Plaintiff's FRCA claim fails. Plaintiff does not allege which subsection of 15 U.S.C. § 1681s-2 that he believes Defendant violated. However, the Court finds that Plaintiff cannot make out a claim under either subsection. The first subsection, 15 U.S.C. § 1681s-2(a), states that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." Plaintiff cannot make out a claim under this subsection because it may only be enforced by

5

governmental agencies and officials. *See* 15 U.S.C. § 1681s-2(c)–(d) (section 1681s-2(a) "shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title"). The second subsection, 15 U.S.C. § 1681s-2(b), applies only when a furnisher of information receives notice from a consumer reporting agency pursuant to section 1681i(a)(2) of a "dispute with regard to the completeness or accuracy of any information provided by" them. After the furnisher of information receives such notice, the section imposes various obligations on them. Here, there is no evidence that Defendant received notice from a consumer reporting agency that it provided incomplete or inaccurate information. Therefore, the obligations imposed by 15 U.S.C. § 1681s-2(b) do not apply to Defendant.

Plaintiff also cannot make out a claim under 15 U.S.C. § 1681d. The Court starts by noting that Plaintiff alleges Defendant violated section 1681d by "failing to maintain reasonable procedures to verify the validity of debts reported." But that is not required by section 1681d. Rather, section 1681d creates requirements for persons who "procure or cause to be prepared an investigative consumer report on [a] consumer," and then provides a safe harbor for a person who is able to show "by a preponderance of the evidence that at the time of the violation he maintained reasonable procedures to assure compliance with" the Act. *See* 15 U.S.C. § 1681d. In addition, section 1681d "applies only to the party which requests preparation of the report, not the entity" that furnished information to the agency that prepared it. *See Ben-Hur v. Equifax Info. Servs., Inc.*, 976 F. Supp. 795, 805 (E.D. Wis. 1997) (citing *Ippolito v. WNS, Inc.*, 636 F. Supp. 471, 473–74 (N.D. Ill. 1986); *Henry v. Forbes*, 433 F. Supp. 5, 10 (D. Minn. 1976)). Accordingly, Defendant cannot violate the provisions of 15 U.S.C. § 1681d. There is another

section of the FRCA that requires the use of "reasonable procedures to assure maximum possible accuracy of the information," but that provision only applies when "a consumer reporting agency prepares a consumer report." 15 U.S.C. § 1681e. Defendant is not in the business of "furnishing consumer reports to third parties." *See* 15 U.S.C. § 1681a(f) (defining consumer reporting agency). Instead, it is a debt collector. As such, it is not subject to the compliance requirement in section 1681e. Since Defendant cannot be held liable under any of the provisions that Plaintiff relies on for his FRCA claim, Defendant is entitled to summary judgment.

    C. <u>Count 3 –Illinois Collection Agency Act ("ICAA"):</u>

The purpose of the ICAA "is 'to make unlawful abusive collection practices.'" *People ex rel. Daley v. Datacom Sys. Corp.*, 585 N.E.2d 51, 58 (Ill. 1991) (citing *Int'l Bureau of Fraud Control, Ltd. v. Clayton*, 544 N.E.2d 416, 420 (Ill. App. Ct. 1989)). Plaintiff alleges that Defendant violated two sections of the ICAA: (1) section 9, and (2) section 5. He states that it violated Section 9 of the Act because it: (1) "misrepresented the validity and amount of [his] alleged debt by reporting [it] to the consumer reporting agencies as owed despite [his] ongoing disputes and no agreement with Defendant", (2) "attempted to collect [his] alleged debt knowing the debt was not verified based on [his] multiple dispute letters and no agreement with Defendant," and (3) sent "multiple collection letters and reports to consumer reporting agencies" that "gave the impression that [his] debt remained valid and collectible despite Defendant not verifying the alleged debt and [his] valid disputes."

In addition, he alleges that Defendant violated section 5 of the ICAA because it was "presumably noncompliant" with "required licensing and record-keeping for debt buyers" because of it's "willful FCRA violations." The Court notes that section 5 does not require

7

collection agencies to meet licensing and record-keeping requirements. Instead, it states how a collection agency may apply for an original license under the Act. *See* 205 ILCS 740/5. Section 4 is the provision that requires collection agencies to register for a license. *See* 205 ILCS 740/4. Two other sections—section 4.5 and section 14—authorize enforcement of the licensing requirements. *See* 205 ILCS 740/4.5, 14a. Section 14a permits a private person to bring an enforcement action against the unlicensed collection agency, but it only allows injunctive relief. *See* 205 ILCS 740/14a. Plaintiff is seeking monetary damages, so he is not asking for relief under section 14a. As such, the Court will review whether there is a private right of action under section 9 or section 4.5.

The Court concludes that Plaintiff's claim under the ICAA fails because the statute does not create a private right of action for money damages. It starts by acknowledging that, in the case of *Sherman v. Field Clinic*, 392 N.E.2d 154 (Ill. App. Ct. 1979), the Illinois Appellate Court held that an implied private right of action exists to pursue violations of section 9 of the ICAA. However, the Court finds that *Sherman* is not controlling. This Court is "not bound by decisions of Illinois's lower courts," *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016), but it must give the decisions great weight and should "deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently," *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). The Court finds that there are six persuasive reasons that it should decline to follow *Sherman*.

First, *Sherman* stands alone. It was decided over 45 years ago, and the Court has been unable to find any other Illinois Appellate Court decision that has even mentioned an implied right of action under any provision of the ICAA. In addition, many Illinois circuit courts have

declined to follow *Sherman* and have dismissed private rights of action seeking to enforce provisions of the ICAA. *See Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537, at *17 n.14 (N.D. Ill. Mar. 30, 2017) (collecting cases); *Galvan v. NCO Fin. Sys., Inc.*, No. 11 C 3918, 2016 WL 792009, at *3 (N.D. Ill. Mar. 1, 2016) (same).

Second, the Department of Financial and Professional Regulation ("DFPR") and the Illinois Attorney General are expressly authorized to enforce provisions of the Act, which indicates that the Illinois legislature did not intend for the courts to imply a private right of action. *See Metzger v. DaRosa*, 805 N.E.2d 1165, 1172 (Ill. 2004) ("[W]hen a statute grants a state official broad authority to enforce the statute . . . it indicates the legislature's intent not to imply a private right of action for others to enforce the statute."). Section 9 allows the DFPR to take both "disciplinary" and "non-disciplinary" action against collection agencies that engage in any one or any combination of more than thirty different types of conduct listed. *See* 205 ILCS 740/9. The Act also authorizes the Attorney General to enforce knowing violations of section 9. *See* 205 ILCS 740/9.7. Section 4.5 expressly authorizes the DFPR to enforce a civil penalty on an entity that "practices, offers to practice, attempts to practice, or holds oneself out to practice as a collection agency without being licensed." *See* 205 ILCS 740/4.5. The express grant of authority for the DFPR and the Attorney General to pursue violations of the ICAA "indicates the legislature's intent not to imply a private right of action." *Metzger*, 805 N.E.2d at 1172.

Third, there is another section of the ICAA that expressly authorizes a private right of action. Section 14a permits a private person to maintain an action for injunctive relief to enjoin an entity from engaging in practice as a collection agency without holding a valid or current license. 205 ILCS § 740/14a. In *Metzger*, the Illinois Supreme Court explained that "[w]here . . .

the legislature has expressly provided a private right of action in a specific section of the statute, we believe the legislature did not intend to imply private rights of action to enforce other sections of the same statute." *Metzger*, 805 N.E.2d at 1172. Since the legislature authorized a private right of action in section 14a of the Act, the Court concludes that the Illinois legislature did not intend to imply a private right of action to enforce other provisions of the ICAA.

Fourth, the ICAA expressly adopts the Illinois Administrative Review Law. *See* 205 ILCS 740/26 ("All final administrative decisions of the [DFPR] are subject to judicial review under the Administrative Review Law and its rules."). The Illinois Supreme Court has stated that "[w]here the statute creating or conferring power on an administrative agency expressly adopts the Administrative Review Law, a circuit court has no authority to entertain an independent action." *Metzger*, 805 N.E.2d at 1171. This is because, under the Administrative Review Law, the circuit courts operate as courts of review for administrative agency decisions. *See* 735 ILCS 5/3-104. By providing that the Administrative Review Law is applicable to the ICAA, the Illinois legislature "has demonstrated its intent that no private right of action be employed" to enforce the Act. *Metzger*, 805 N.E.2d at 1172.

Fifth, the Illinois Supreme Court has suggested in dicta that no implied private right of action exists to enforce provisions of the ICAA. In *Datacom Sys. Corp.*, the Cook County State's Attorney, on behalf of the People of the State of Illinois, filed a complaint against the City of Chicago and Datacom, a city vendor that was contracted to collect on delinquent parking tickets, in the Cook County Circuit Court. 585 N.E.3d at 55. The complaint alleged Datacom violated numerous provisions of the ICAA in the process of collecting on the parking tickets. *Id.* at 55–56. On appeal, Datacom argued that "the State has no standing to prosecute civil damage suits

10

under the [ICAA] for the benefit of private parties." *Id.* at 62. The Illinois Supreme Court agreed, and stated that, "at the time the State filed the complaint, only the [DFPR] had standing to pursue civil violations of the [ICAA]." *Id.* Based on the court's citations, the qualification on the statement is referring to a later-enacted provision of the ICAA, section 14a, that expressly provides a private right of action for injunctive relief. *See Eul*, 2017 WL 1178537, at *18 n.15. In other words, apart from the private right of action authorized by section 14a, the Illinois Supreme Court agreed that only the DFPR had standing to pursue civil violations of the ICAA.[1] *Id.*

Sixth, an implied private right of action is not appropriate under the ICAA. Implied private rights of action are appropriate if:

> (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute.

*Metzger*, 805 N.E.2d at 1168. The Illinois Supreme Court has "implied a private right of action under a statute 'only in cases where the statute would be ineffective, as a practical matter, unless such an action were implied.'" *Id.* at 1170 (quoting *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1120 (Ill. 1999)). This Court finds that a private right of action for money damages is not required to make the ICAA effective because the Act allows the DFPR to levy extensive monetary penalties for noncompliance. *See* 205 ILCS 740/4.5, 9.

Given that there are six persuasive reasons for this Court to decline to follow *Sherman*, it finds that *Sherman* is not controlling and that there is no private right of action for money

---

[1] The Court notes that 205 ILCS 740/9.7, the provision that allows the Attorney General to enforce knowing civil violations of Section 9 of the ICAA, was added in 2008, around seventeen years after the Illinois Supreme Court decided *Datacom Systems Corp.*, 585 N.E.2d 51.

11

damages under the ICAA. Because there is no private right of action for money damages under the Act, Plaintiff's claims must fail, and Defendant is entitled to summary judgment.

    D.  <u>Count 4 – Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"):</u>

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). To plead a private cause of action under the ICFA, a plaintiff must allege five elements:

> (1) an unfair or deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; (4) actual damage to the plaintiff; and (5) that such damages were proximately caused by the defendant's deception.

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 908–09 (N.D. Ill. 2012); *accord Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). *See also Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005). The requirement of "actual damage" means Plaintiff must have suffered "actual pecuniary loss." *Haywood*, 997 F.3d at 333.

Plaintiff alleges that "Defendant engaged in false representations, deceptive acts, and unfair methods of competition in trade or commerce by misrepresenting the character, amount, and legal status of the alleged debt and using deceptive practices in their communications." Plaintiff has not presented any admissible evidence of a deceptive act by Defendant. In addition, he has not alleged nor presented any admissible evidence that Defendant intended for him to rely on any deceptive act. Finally, he has not alleged nor presented any admissible evidence to show that he suffered actual pecuniary loss, or that the loss was the result of the alleged conduct by Defendant. Since Plaintiff has not presented any admissible evidence to make out his claim under the IFCA, Defendant is entitled to summary judgment.

  E. Count 5 – Illinois Uniform Commercial Code ("Illinois UCC"):

Section 9-203 of the Illinois UCC governs attachment and enforceability of security interests. *See* 810 ILCS 5/9-203. Plaintiff claims Defendant violated section 9-203 because it "failed to provide the necessary documentation and notification regarding the transfer and assignment of the alleged debt." The Court concludes that Plaintiff's claim must fail for two reasons. First, section 9-203 is not a provision of the Illinois UCC that can be violated. Instead, it is a section that informs creditors of the requirements to make their security interest enforceable against the debtor. *Id.* Second, Article 9 of the Illinois UCC is limited in scope. Section 9-109 defines its scope by listing the transactions that it applies to. *See* 810 ILCS 5/9-109. Plaintiff has presented no admissible evidence that the Walmart Rewards Credit Card Account is a secured commercial transaction within the scope of Article 9. Therefore, Plaintiff's Illinois UCC claim fails and Defendant is entitled to summary judgment.

**IV. CONCLUSION**

The Court concludes that all five of Plaintiff's claims fail as a matter of law. Therefore, the Court GRANTS Defendant LVNV Funding's Motion for Summary Judgment (Doc. 13) on all counts and DIRECTS the Clerk of Court to enter judgment accordingly.


**IT IS SO ORDERED.**
**DATED**: **October 29, 2025**

                 s/ J. Phil Gilbert
                 **J. PHIL GILBERT**
                 **United States District Judge**